**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 1:16-24680-CIV-GAYLES/TURNOFF**

LIVING TREE LABORATORIES, LLC,

                  Plaintiff,

v.

UNITED HEALTHCARE SERVICES, INC.,
OPTUMINSIGHT, INC.,
UNITED BEHAVIORAL HEALTH, INC., and
UNITEDHEALTH GROUP, INC.,

                  Defendants.

_____/

## AMENDED COMPLAINT

      Plaintiff Living Tree Laboratories, LLC ("Living Tree" or "Plaintiff") files this Amended Complaint against Defendants United HealthCare Services, Inc. ("UHS"), OptumInsight, Inc. ("Optum"), United Behavioral Health, Inc. ("UBH") and UnitedHealth Group, Inc. ("UHG") (collectively, "United" or "Defendants"), and would respectfully show the Court as follows:

### I.     INTRODUCTION

      1.    Living Tree files this Amended Complaint against Defendants for denying millions of dollars of Living Tree claims for medically necessary substance abuse treatment, without any basis in law or fact.  Defendants have also engaged in a pattern of paying claims for such treatment, submitted to Defendants for reimbursement in full, then many months later, making improper repayment demands and unauthorized attempts to recoup millions of dollars related to these claims.

      2.    Living Tree also brings this action to enjoin defendants from engaging in unfair and deceptive acts and practices, identified herein, which are designed to delay, deny, impede

300491631 v5

and reduce lawful reimbursement to Living Tree for rendered medically necessary services to participants of Defendants' health care benefit plans and policies of insurance.

3.     Defendants provide health care insurance, administration, and/or benefits to insureds or plan participants pursuant to a variety of health care benefit plans and policies of insurance, including employer-sponsored benefit plans, government-sponsored benefit plans, and individual health benefit plans ("Plans").

4.     Defendants sell health insurance plans to consumers in all 50 of the United States, and consumers pay a premium for coverage for certain medically necessary services, such as substance abuse treatment.

5.     Defendants have long engaged in a pattern of deceptive practices to delay and deny coverage under their Plans.  For example, in 2008, the result of a six-month investigation by the New York Attorney General into the reimbursement pricing index created by Ingenix (now Optum), found that two of Defendants' subsidiaries, including UHS, dramatically under-reimbursed their members for out-of-network medical expenses.[1]  In addition, in January 2015, Defendants settled a lawsuit for $11.5 million where providers charged that Defendants' payment practices for in-network physicians were unfair, including allegations that the insurer used automated software to improperly delay adjudication of claims.[2]

6.     Commencing in or around February 2016, and continuing through to the present, Defendants have turned their improper practices toward Living Tree.  As shown further below,

---

1 CUOMO ANNOUNCES INDUSTRY-WIDE INVESTIGATION INTO HEALTH INSURERS; FRAUDULENT REIMBURSEMENT SCHEME, *available at* https://ag.ny.gov/press-release/cuomo-announces-industry-wide-investigation-health-insurers-fraudulent-reimbursement (last visited Feb. 21, 2017).

2  Solnik, Claude, UNITEDHEALTHCARE REACHES $11.5M SETTLEMENT, *available at* http://libn.com/2015/05/06/unitedhealthcare-reaches-11-5m-settlement/ (last visited Feb. 21, 2017).

300491631 v5

in violation of their duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., and state law, Defendants have failed to pay Living Tree in full for health care services that Living Tree has provided to patients covered by the health care benefit plans and policies of insurance provided or administered by Defendants ("United Subscribers").

7.     Specifically, Defendants have unjustifiably and arbitrarily denied approximately 8,363 separate claim lines[3] for medically necessary urinalysis drug testing, an integral component to substance abuse treatment, that Living Tree provided for approximately 130 patients insured by Defendants (the "Denied Claims Patients"), totaling $6,460,649.91.   Exhibit A, which is attached hereto and incorporated herein by reference, is a spreadsheet detailing the non-payments for each of the 8,363 separate claim lines for the 130 Denied Claims Patients. For each such claim line, the spreadsheet lists, among other things, the specific payer, the patient member identification number, the date of service, the amount charged, and the charge code depicting the specific testing performed.[4]   The coverable charge codes are described on Exhibit B, which is also attached hereto and incorporated herein by reference.

8.     Each test described on Exhibit A consists of qualitative and/or quantitative testing ordered by the Patient's treating physician.   Qualitative testing performed by Living Tree in a comprehensive panel tests for numerous specific drugs and produces either a "positive" or "negative" result.   Quantitative testing is performed on a urine sample to test the volume of drugs present and the value of any prescribed medications contained therein.   In addition, and importantly, quantitative testing also confirms the presence of alcohol and designer drugs (e.g.,

---

[3] Patients receive weekly urinalysis drug testing as a key component to their substance abuse treatment.  A qualitative test is unable to detect designer drugs. Each test results in an individual claim line sent by Living Tree to Defendants.

[4] For privacy purposes, Individual Denied Claims Patients are referred to herein according to the "Denied Claims Patient Number" column in Exhibit A.

3

flacca, spice and bath salts) that are unique to a patient population.  Both types of tests are medically necessary for the patients' substance abuse treatment.

9.     While Living Tree submitted each claim line with coverable charge codes, Defendants denied each claim line for one of the following two reasons, neither of which has any support in the United Subscriber Plans:  (1) an internal Optum policy that purportedly provides that no coverage for quantitative drug testing is available where qualitative testing is not ordered or yields a negative result, and (2) the purported lack of a valid physician order and laboratory result with Living Tree's claim line submissions.

10.     Another 908 patient claim lines for Living Tree's treatment of approximately 54 patients, totaling $1,196,600.00, remain unpaid to date.   These claims are described more fully on Exhibit C, which is also attached hereto and incorporated herein by reference.  Based on Defendants' recent recoupment demands and claims denials, Living Tree anticipates that these claims will also be denied by Defendants.

11.     In addition, for 1,734 claim lines related to medically necessary treatment provided by Living Tree for 5 patients ("Recoupment Patients 1 through 5") that were paid by Defendants from January 10, 2015, continuing through and including, November 25, 2015, Defendants demand repayment for alleged overpayments, and seek offsets against future Living Tree claim lines in the amount of $328,750.18.   See Exhibit D attached hereto and also incorporated herein by reference.  Defendants used their review of these 1,734 claim lines related to only *5 patients* as the basis to apply an unsubstantiated and unsupported extrapolation method to the *entire* universe of Living Tree claim lines paid by Defendants during this time period for an additional demanded repayment amount of $4,155,700.38.  See Id.  Accordingly, Defendants' demand for repayment of alleged overpayments inflated to $4,484,450.56.

4

12.     Defendants also performed a separate review of 948 health insurance claim lines related to medically necessary treatment provided by Living Tree for a single patient ("Recoupment Patient 6"), dating back to June 8, 2015, continuing through and including, October 21, 2015, and as a result, demand repayment for alleged overpayments and seek offsets against future Living Tree claim lines in the amount of $188,305.74.  See Exhibit E attached hereto and incorporated herein by reference.

13.     In total, Defendants seek to improperly recoup, or have denied or are expected to deny, Living Tree claims for medically necessary treatment provided to United Subscribers in the amount of approximately $12,330,006.21.

14.     Living Tree's attempts to obtain additional information and to resolve these disputes with Defendants have been futile.  Living Tree unsuccessfully appealed the 8,363 denied claim lines.  Defendants upheld their initial decisions, relying on an internal Optum policy not included in the United Subscribers' Plans, in addition to a minor technicality also set forth by Defendants in support of their repayment demand for Recoupment Patients 1 through 5. Living Tree also appealed the claim lines for Recoupment Patients 1 through 6, including supporting documentation that established that claims should have been paid in full.  In response, Defendants reiterated their original basis for demanding repayment for claims lines related to Recoupment Patients 1 through 5, despite being provided with detailed support that favored payment for each of the 1,734 claim lines, and then extrapolated these 5 patients' claim lines against all paid Living Tree claims to demand an additional $4.1 million in alleged overpayments.  For Recoupment Patient 6, Defendants also upheld their denial, but abruptly changed their basis for the repayment demand.  Finally, based on Defendants' recent actions, Living Tree reasonably expects the remaining pending claim lines to also be denied.

15.     Defendants systematically deny payment of medically necessary claim lines to achieve internal financial targets without regard for individual medical needs, by *inter alia*, applying an internal Optum policy in a manner they know to be unintended and unreasonable for the purpose of denying coverage for treatments that are medically necessary.

16.     Defendants systematically deny reimbursement to Living Tree for medically necessary services by routinely and unjustifiably refusing to pay for services without the submission of physician orders and laboratory reports for each claim line, and upon receipt, deny the claim lines based on a minor technicality Defendants allege render the physician orders invalid.  Accordingly, Defendants unjustifiably increase Living Tree's administrative burden and delay or deny payment to Living Tree for medically necessary services.

17.     Defendants fail to provide sufficient explanation for their failure to reimburse claim lines, and on appeal, often entirely change the basis for denial.

18.     Defendants' unfair and deceptive practice and pattern of paying claims in full, then making improper repayment demands and unauthorized attempts to offset these amounts against future claim lines, in addition to unlawfully denying claims without providing the proper notice and opportunity for a full and fair review, and denying and delaying payments by levying an unjustifiable, unreasonable and administrative burden upon Living Tree that is futile to the adjudication of their claim lines by Defendants, has deprived Living Tree of millions of dollars of lawful reimbursement for medically necessary services provided to United Subscribers, is in clear violation of the terms of Defendants' Plans covering the United Subscribers, as well as state and federal law.

## II.     THE PARTIES

19.     Plaintiff Living Tree is a limited liability company organized under the laws of the State of Florida.  Living Tree operates a licensed drug treatment facility doing business as

Living Tree Laboratories, LLC, located at 555 Heritage Drive, Suite 125, Jupiter, FL 33458.  All of Living Tree's members are citizens of the State of Florida.

20.     Defendant UHS is a corporation of the State of Minnesota with its principal place of business located at 9700 Health Care Lane, Minnetonka, Minnesota 55343.

21.     Defendant Optum is a corporation of the State of Delaware with its principal place of business located at 11000 Optum Circle, Eden Prairie, Minnesota 55344.

22.     Defendant UBH is a corporation of the State of California with its registered office located at 1010 Dale Street North, St. Paul, Minnesota 55117.

23.     Defendant UHG is a corporation of the State of Delaware with its principal place of business located 9900 Bren Rd E. Minnetonka, Minnesota, 55343.

24.     Defendants are in the business of providing health benefit plans and policies of health insurance, including individual health benefit plans, employer-sponsored group health plans, and government-sponsored health benefit plans, including, but not limited to, the plans that covered the treatment received by the United Subscribers.

### III.    JURISDICTION AND VENUE

25.     The Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Living Tree asserts claims against Defendants, in Counts One through Three, under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

26.     This Court also has supplemental jurisdiction over Living Tree's state law claims against Defendants, in Counts Four through Eleven, because these claims are so related to Living Tree's federal claims that Living Tree's state law claims form a part of the same case or controversy under Article III of the United States Constitution.  As such, the Court has

300491631 v5

supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

27.     Furthermore, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

28.     This Court has personal jurisdiction over the Defendants because, at all times material hereto, Defendants carried on one or more businesses or business ventures in this judicial district; there is the requisite nexus between the business(es) and this action; and Defendants engaged in substantial and not isolated activity within this judicial district.

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial portion of the events giving rise to this action arose in this District.

## IV.     GENERAL ALLEGATIONS

**A.     The Living Tree Laboratory.**

30.     Living Tree is a local Toxicology, Hematology and Chemistry laboratory that provides screening and confirmation services to medical facilities, substance use treatment centers, pain management clinics, OB/GYN offices and physician practices in Florida and California.

31.     At Living Tree's Florida toxicology and urinalysis laboratory in Jupiter, Florida, Living Tree processes weekly urinalysis testing for patients enrolled in various local substance abuse treatment programs.  The urinalysis testing is required by the substance abuse treatment program to monitor a patient's treatment progress.  Each week, the substance abuse treatment centers send qualitative and quantitative urinalysis testing to Living Tree for processing.  Living Tree processes the samples and then directly submits individual patient claims for each urinalysis test to the patient's insurer, in this case, to Defendants.

**B.**      **The Living Tree's Out-of-Network Status.**

32.      Health care providers are either "in-network" or "out-of-network" with respect to insurance carriers. "In-network" or "participating" providers are those who contract with health insurers that require them to accept discounted negotiated rates as payment in full for covered services.

33.      "Out-of-network" or "non-participating" providers are those that do not have contracts with insurance carriers to accept discounted rates and, instead, set their own fees for services based on a percentage of charges.

34.      Living Tree is an "out-of-network" provider with respect to Defendants. Nonetheless, upon information and belief, the Plans provide coverage for substance abuse treatment services, including laboratory services and related supplies, from out-of-network medical providers, including Living Tree.

35.      Despite its out-of-network status with respect to United, Living Tree routinely provides medically necessary treatment to United Subscribers. Moreover, until late February 2016, United routinely provided approval and payment to Living Tree for this treatment.

36.      For example, Living Tree submitted claims for medically necessary qualitative and quantitative urinalysis testing provided for Patient 13.  Living Tree was reimbursed on average 81% for all quantitative testing submitted by Living Tree and paid by Defendants prior to February 22, 2016.  Id.  After that date, with no support in the Plans, Defendants abruptly dropped the reimbursement rate for quantitative testing to, on average, 19%.  See Exhibit F attached hereto and incorporated herein by reference.

37.      Moreover, whereas Defendants paid 87% of the billed amount for quantitative testing for Patient 49 performed before February 22, 2016, they subsequently dropped the

reimbursement rates to an average reimbursement amount of 15%.  See Exhibit G attached hereto and incorporated herein by reference.

38.     Similarly, prior to February 18, 2016, Living Tree  received reimbursement of some payment amount for the qualitative tests processed for Patients 13 and 49.  See Exs. F and G.  After this date, however, Defendants denied every claim line for the exact same services provided to Patients 13 and 49.  See Ex. A.

**C.     United Subscribers Assign Their Insurance Benefits to Living Tree.**

39.     Due to Living Tree's out-of-network status with United, Living Tree had no contract with United setting forth the terms under which United would pay for services that Living Tree provided to patients who are United Subscribers.

40.     Rather, as out-of-network providers, Living Tree provides healthcare services to all persons, including, but not limited to, those persons whose Plans allow them to receive services from providers who do not participate in their respective carrier's insurance network.

41.     Under the terms of most Plans that provide coverage for out-of-network care, a patient is responsible for the payment of "coinsurance," a percentage of the out-of-network provider's charge for which the patient is responsible.

42.     Upon registration at Living Tree and the substance abuse treatment program in which the patient is enrolled (the "Facility"), patients, including United Subscribers, execute an "Assignment of Benefits" form (the "AOB"), among other documents.  In the AOB, United Subscribers assign to Living Tree, or the Facility that files the claim with United on Living Tree's behalf, their rights to benefits under Defendants' Plans.

**D.     The Denied Claims Patients and Recoupment Patients 1 through 6s' AOB and "Authorization to Appeal" Forms.**

**Recoupment Patients 1 through 5s' AOB and "Authorization to Appeal" Forms.**

10

43.     The Denied Claims Patients and Recoupment Patients 1 through 5 all signed AOB forms with Living Tree that provide for the assignment to Living Tree of all rights, benefits, and causes of action under the United Subscriber Plans.  Specifically, these AOB forms state as follows:

> I hereby assign to **Living Tree Laboratories LLC** as my designated authorized representative, all benefits and rights that I and my dependents have to:  (i) receive payments from any entity or collateral source, including, but not limited to, the above named health insurance plan, any third party payer, or any self-funded plan,; and/or (ii) otherwise pursue any claim, right, or cause of action that may arise under my plan for the services provided by **Living Tree Laboratories LLC** to the above named patient.
>
> I hereby make, constitute, and appoint **Living Tree Laboratories LLC** as a true and lawful attorney in fact for the limited purposes to receive, endorse, and deposit to its account any check, drafts, or money orders made payable to me as payment for services rendered to the patient or policy holder.  I understand that payments from the health insurance plan may be paid directly to me even though I have assigned the right to payment to **Living Tree Laboratories LLC**.  Immediately upon receipt of payments, I will forward the same to **Living Tree Laboratories LLC**.  I agree that I am personally liable to **Living Tree Laboratories LLC** for such monies.
>
> I understand that **Living Tree Laboratories LLC** would not have accepted the patient, except for this assignment and my guarantee of the payment to **Living Tree Laboratories LLC**, of all sums paid by the health insurance plan for the treatment of the patient.  I hereby authorize **Living Tree Laboratories LLC** to submit claims on my behalf to the insurance company listed on the current insurance card I have provided to **Living Tree Laboratories LLC** in good faith.  A photocopy of my signature can be used to process insurance claims.

44.     The Denied Claims Patients and Recoupment Patients 1 through 5 also signed "Authorization to Appeal" forms that provide for the authorization of Living Tree to act as the Denied Claims Patients' and Recoupment Patients 1 through 5s' personal authorized

representative regarding all rights and claims for services provided to the Denied Claims Patients and Patients 1 through 5 by Living Tree:

> I, [Patient], hereby voluntarily designate, authorize, and convey **Living Tree Laboratories LLC** and its representatives, to the full extent permissible by law, to be my personal authorized representative regarding all rights and claims related to any services provided at this facility, which authorizes **Living Tree Laboratories LLC** to:
>
> (1) submit any and all appeals when any entity denies me a benefit to which I am entitled;
>
> (2) act on my behalf in connection with any claim, right or cause of action that may arise under my plan; and
>
> (3) act on my behalf to pursue such claim, right, or cause of action in connection with said plan including, but not limited to, the right and ability to act as my authorized representative with respect to a benefit plan governed by the provisions of ERISA as provided in 29 C.F.R. § 2560.503-1(b)(4), with respect to any healthcare expense incurred as a result of the services I received from **Living Tree Laboratories LLC** and, to the extent permissible under the law, to claim on my behalf such benefits, claim, reimbursement, and any other applicable remedy, including fines.
>
> Unless revoked, this authorization is valid for all administrative and judicial reviews under ERISA and all applicable federal and state laws.  I understand that I will have no right to appeal a denied claim for this item or service unless I cancel the authorization in writing.

45.     All of the Denied Claims Patients and Recoupment Patients 1 through 5 participate in Plans sponsored by one or more of the Defendants.  Upon information and belief, none of these Plans contains an anti-assignment provision that would preclude these patients from assigning their Plan benefits to Living Tree.  Indeed, in their motion to dismiss the original Complaint, Defendants did not cite to any purported anti-assignment clause other than the clause in the Plan applicable to Recoupment Patient 6.

46.     To the extent that any such clauses are present in any of the Plans, upon information and belief (and based on the clause Defendants have cited with respect to

Recoupment Patient 6), the clauses expressly permit the patients to assign Plan benefits to health care providers with Defendants' consent.   Defendants have consented to the assignments, or otherwise waived the applicability of the anti-assignment clauses, through an extended course of dealing, described more fully above and below.

47.     Among other things, when they decide to pay a claim, Defendants remit payment directly to Living Tree, without reliance on any purported anti-assignment clauses, albeit in amounts grossly inadequate relative to Living Tree's actual charges.   Defendants also force Living Tree to pursue Defendants' internal appeals process and improper post-payment audit processes, described more fully above and below, only to frustrate Living Tree when it pursues those processes, but again, without citing to any purported anti-assignment clauses. Furthermore, in Defendants' July 27, 2016 letter to Living Tree claiming a $328,750.18 overpayment was made with respect to Recoupment Patients 1 through 5, Defendants expressly stated "United values its relationship with you and appreciates the care your office provides to the people it insures."   Nowhere in this letter did Defendants state that these patients' Plans contained anti-assignment clauses that would prevent Living Tree from pursuing its claims here. This and other conduct described more fully above and below amounts to Defendants' clear consent to its subscribers' assignments of Plan benefits to Living Tree, or at a minimum, is an extended course of dealing that is inconsistent with any alleged anti-assignment clauses.

**Recoupment Patient 6's AOB Form.**

48.     Recoupment Patient 6 signed an AOB with the Facility in which he was enrolled, Renew Counseling Center/Rock Recovery Center.   The AOB provides for payment of any benefits directly to the Facility, on behalf of Living Tree:

> I hereby authorize and request that payment of benefits by my Insurance
> Company(s) UnitedHealthCare be made directly to Renew Counseling

13

> Center, LLC herein referred to as "Facility", for services furnished to me or my dependent.  I understand that my Insurance Company may only cover a portion of the total bill.  I further understand that I may be responsible for all charges not covered by this assignment.

49.     The AOB also provides for the Facility, on behalf of Living Tree, to act as the United Subscriber/Patient's authorized agent and representative to pursue actions to recover benefits under a United Plan:

> Facility has been appointed by me to act as my representative and on my behalf in any proceeding that may be necessary to seek payment from my insurance carrier.

50.     This AOB also provides, in part, that the patient is responsible for the payment of coinsurance and other charges not paid by the patient's Plan:

> I understand that my Insurance Company may only cover a portion of the total bill.  I further understand that I may be responsible for all charges not covered by this assignment.

51.     Recoupment Patient 6 also participates in a Plan sponsored by Defendants. Defendants have alleged that this Plan contains a purported anti-assignment clause, but the cited clause merely states that "You may not assign your Benefits under the Plan to a non-Network provider without UnitedHealthCare's consent."   Again, as noted above, Defendants have consented to the assignments, or otherwise waived the applicability of the anti-assignment clauses, through an extended course of dealing, described more fully above and below.

**E.     Defendants' Refusal to Cover Quantitative Urinalysis Drug Tests Where Qualitative Tests Yield Negative Results.**

52.     Upon information and belief, the United Subscriber Plans included in-patient and out-patient substance abuse treatment coverage, described more fully below.   The United Subscribers relied on this coverage when enrolling in such Plans, and paid a premium over other plans to ensure inclusion of substance abuse coverage.

14

53.      However, in violation of the terms of the Plans (described more fully below) requiring Defendants to provide, among other things, coverage for in-patient and out-patient substance abuse programs, Defendants denied 8,363 claim lines for the 130 Denied Claims Patients to whom Living Tree provided medically necessary urinalysis drug testing in the amount of $6,460,649.91.  Living Tree reasonably expects the remaining pending claims for the same services related to an additional 908 claim lines pertaining to 54 patients in the amount of $1,196,600 to also be denied, for a total of denied claims in the amount of $7,657,249.91.

54.      Living Tree received letters denying these claims from Defendants, stating that the denials were based on the Optum Policy, a policy external to the Plans.  The letters explained that the "Optum Lab Drug Screen Services" policy does not provide coverage for quantitative testing where the results of qualitative testing are negative.

55.      Weekly urinalysis drug testing is an integral part of substance abuse treatment, as the urinalysis testing requires the patient have accountability for his/her actions, which often counters deniability that accompanies addiction, and acts to deter the patient from a drug relapse. The urinalysis testing also gauges the progress a patient is making during his/her treatment program.  Also, as explained above, quantitative testing measures the volume of a drug present in a sample, the value of any prescribed medications contained therein, and importantly, also confirms the presence of alcohol and designer drugs (e.g., flacca, spice and bath salts) that are unique to a patient population.  A qualitative test is unable to detect alcohol and designer drugs, which are often the most readily accessible substances available to an addict in his/her population

56.      Defendants' reliance on the Optum Policy to deny coverage for quantitative testing independent of a positive qualitative test result is contrary to the terms of the applicable

Plans and best medical practices.  In essence, Defendants' practice encourages patients to engage in an unhealthy pattern of substance abuse.  The critical component of accountability from the patient's substance abuse treatment is erased if a patient seeks out alcohol and street drugs, which a qualitative test cannot detect.  The Optum Policy also prevents the Facility from identifying and measuring the quantity of prescribed medications in a patient's system, which is only measurable through quantitative testing, to ensure a patient is only taking the prescribed dose.

57.     Living Tree submitted claim lines for qualitative testing (CPT Code G0479) and quantitative testing (CPT Code G0483) provided on July 29 and 30, 2016, for Patient 46.  These claims were denied and Living Tree filed a first level appeal, which Defendants received on November 11, 2016.  The first level appeal included a copy of the physician order, screening results, confirmation urinalysis testing results, AHCA, CLIA and COLA licenses, list of laboratory equipment, LCMS test panel, Laboratory Director's credentials/license and Laboratory staff credentials/licenses.  See Ex. H attached hereto.  Notably, Patient 46's confirmation, or quantitative urinalysis testing results, revealed a positive result for an antipsychotic drug, Quetiapine, which Patient 46's qualitative urinalysis screening would not have detected.  Id.  On appeal, by letter dated December 11, 2016, Defendants reversed their denial related to the qualitative testing.  See Ex. I attached hereto.  Despite the detailed information provided by Living Tree establishing why the quantitative testing was medically necessary, Defendants upheld their denial related to the quantitative testing.  The December 11 letter stated that "[t]he received documentation does not support the billed service HCPCS code G0483; therefore, the claims are not eligible for reimbursement.  No positive results found.

16

Based on the Optum Lab Drug Screen Policy, quantitative testing is not reimbursable when there is no underlying qualitative testing conducted or no positive results found." Id.

58.    The form of "coverage" provided under the Optum Policy is entirely contradictory to the terms of the applicable Plans (described below), the goals of a substance abuse program and best medical practices, which encourage the patient to not engage in substance abuse of any kind.  By failing to cover medically necessary urinalysis tests unless a qualitative test is prescribed and yields a positive result, the Optum Policy fails to meet the United Subscribers' reasonable expectations for substance abuse treatment coverage they relied upon when choosing to enroll in the Plans.

59.    Defendants' denial of these 8,363 claim lines based on the Optum Policy, which, on information and belief was adopted by Defendants in 2016, and is unsupported by the United Subscribers' Plans, effectively prevents hundreds of patients battling drug addition from seeking medical attention by enrolling in an effective substance abuse program and thus prevents these patients from becoming healthy members of society.

**F.    Defendants' Unjustifiable Demands For Additional Supporting Documents Not Required by The Plans.**

60.    As an additional basis for denying many of the 8,363 claim lines for the 130 Denied Claims Patients to whom Living Tree provided medically necessary urinalysis testing, Defendants continue to engage in the deceptive practice of requiring additional supporting documentation, not required by the Plans, prior to processing a claim.  In order to satisfy Defendants' demands, Living Tree is saddled with a large drain on administrative resources and incurs an additional expense.  These demands serve as an additional basis for Defendants to delay or deny payment, as in most instances where Defendants cannot apply the Optum Policy to deny a claim, i.e., for qualitative tests.  Despite Living Tree's compliance with Defendants'

demands, Defendants' Denied Claims Patients' denial letters often cite to a minor technicality in the supporting documentation to deny a claim line for Living Tree's failure to provide valid supporting documentation.

61.    Upon information and belief, prior to mid-2015, Living Tree submitted the claim lines without additional supporting documentation and received reimbursement without issue. Then, in or about mid-2015, Living Tree began to receive letters, first intermittently, and then for nearly every single submitted claim line, requesting that a physician order and laboratory result be submitted in order to process the claims.  In some instances, such as the Patient 46 example (see Ex. G attached hereto), before Defendants would process Living Tree's claims, they were required to submit the following to Defendants:  (1) Progress notes for the date(s) of service above that include:  diagnosis, functional status, treatment plans/goals, symptoms, prognosis and progress to date; (2) session start and stop times; (3) medication prescription monitoring (if applicable); (4) modalities and frequencies of treatment furnished; and (5) results of clinical tests (if applicable).  Most of this information resides in the patient's medical file at the Facility and is not maintained by Living Tree.

62.    Then, on July 1, 2016, Living Tree received a letter from Defendants requiring that as of July 18, 2016, "claims received … from your facility must include medical records/lab results relating to the claim, as well as the full contact information for the ordering physician, in order for the claim to be considered for benefits."  See Exhibit J.  The letter also provided the basis for requiring such documentation for the first time:  "[t]he insured's insurance contract states that adequate *Proof of Loss* is a requirement for payment of a claim.  *'Proof of loss'* is defined as information required by us to decide if a claim is payable and the amount that is

payable, including, but not limited to, claims forms, and medical bills or records."    Notably, the July 1 letter failed to cite to a specific Plan document or provision.  Id.

63.    Living Tree had been providing additional supporting documentation in response to Defendants' individual requests (which Living Tree received for nearly every single claim line submitted) for over a year prior to receipt of the July 1 letter, and subsequently continued to do so.  Then, on or about January 25, 2017, Living Tree's billing company, MedPro Billing ("MedPro"), contacted Defendants to seek clarification regarding the July 1 letter.  Defendants informed MedPro that the July 1 letter only applied to the United Health One and Golden Rule Plans.  Id.  **Living Tree has only one patient enrolled in either of these Plans and not one of the denied claims relates to that patient.**

64.    Due to the required coordination with the Facilities since mid-2015 to obtain the demanded additional documentation, and the additional administrative burden in copying and mailing such documents for inclusion with thousands of claim lines, Living Tree was forced to incur the expense of hiring full-time staff to deal solely with Defendants' documentation requests.

65.    Defendants have provided no basis in the United Subscriber Plans to support their demand for additional supporting documents for nearly every claim line submitted by Living Tree.  In addition, based on MedPro's January 2017 realization that the July 1 letter, which led Living Tree to believe it was required to comply with Defendants' demands for *all* claims received by Defendants after July 18, 2016, only applied to a single patient, Defendants intentionally misled Living Tree to believe its claims would only be adjudicated if Living Tree complied with Defendants' demands.  Defendants cite to no Plan language, a specific Plan or statute requiring the submission of a physician order/requisition and laboratory results, or any

other patient medical files, to justify their imposition of this heavy administrative and costly burden upon Living Tree.

66.     Instead, despite Living Tree's compliance with Defendants' supporting document demands, Defendants denied 8,363 claim lines submitted by Defendants beginning on March 20, 2015, continuing through an including September 28, 2016, for $6,460,649.91, citing in most instances that, where the Optum Policy did not apply, the documentation provided purportedly failed to support coverage.  See, for example, Exhibits K through M attached hereto (Defendants upheld denials at second level appeal for Patients 40, 56 and 63 for technicalities or failure to submit documents when they were clearly included in original submission and on appeal).  As evidenced by these denials, of which only 1,465 of the 8,363 denied claim lines relate to claims submitted after July 18, 2016, (see Ex. A), and none that relate to a United Subscriber enrolled in either the United Health One or Golden Rule Plans (see id.), the only reason for levying this administrative burden and cost upon Living Tree is to deny and delay reimbursement of monies due and owing to Living Tree for rendering medically necessary services to the United Subscribers.

**G.     Defendants' Arbitrary Application of The Optum Policy and Required Additional Supporting Documentation to Unreasonably Deny Reimbursement to Living Tree for Medically Necessary Services Provided to The United Subscribers.**

67.     Defendants' arbitrary application of the Optum Policy and demands for additional supporting information to unreasonably deny and delay reimbursement to Living Tree for qualitative and quantitative urinalysis testing, a critical component of the patient's substance abuse treatment, reveals Defendants' intention to coerce Living Tree into becoming an in-network provider to accept lower reimbursement rates or to go out of business.

20

68.     For example, Living Tree submitted claim lines for medically necessary qualitative and quantitative urinalysis testing provided for Patient 16 for dates of service ranging from April 26, 2016, continuing through and including May 21, 2016 (the "April/May Claims") and complied with Defendants' request for additional information, including, among other documents, a physician order and laboratory reports for each date of service. See Ex. N attached hereto. Despite the inclusion of the physician order, these claims were all denied for either *failing to include a valid physician order* or based on the Optum Policy, despite the fact that Living Tree complied with Defendants' requests. See Ex. O attached hereto. Living Tree also submitted claim lines for Patient 16 for dates of service from June 15, 2016, continuing through and including June 17, 2016 (the "June Claims"), for the same services provided by Living Tree as contained in the April/May Claims, including the same CPT codes. See Ex. P. The June Claims qualitative tests contained no positive results, nevertheless, Defendants overturned their original denial and stated that the submitted records supported billing. See Exhibit Q attached hereto.

69.     In another example, Defendants completely changed the basis for denial on a second level appeal - choosing the means to fit the end: denied claim lines. Living Tree submitted claim lines for medically necessary services provided to Patient 80 for dates of service ranging from June 1, 2016, through and including June 17, 2016. See Exhibit R attached hereto. Living Tree received a denial letter from Defendants on October 28, 2016, denying the claim lines for failure to include a physician order requesting the provided services. See Exhibit S attached hereto. Living Tree provided the requested physician order. Then, on January 18, 2017, Defendants overturned the denial for the qualitative testing, however, upheld the denial related to the quantitative testing relying, for the first time, on the Optum Policy.

21

70.     While Living Tree balance bills patients when their claims are denied or underpaid by Defendants, most of its patients, including the United Subscribers, are indigent. Accordingly, Living Tree cannot continue to operate when it is continuously deprived of millions of dollars denied by Defendants while incurring the additional expense of complying with Defendants' additional supporting document demands.     Through Defendants' continued deceptive practices, United Subscribers, who pay a premium for substance abuse coverage under the United Subscriber Plans, are wrongfully denied coverage and will be without access to necessary medical treatment if Defendants' actions prohibit Living Tree's continued operations.

**H.     Defendants' Improper Repayment Demands and Unauthorized Attempts to Recoup Payments for Services Rendered by Living Tree.**

   i.     Defendants' Improper Repayment Demands Related to Claims Submitted For Recoupment Patients 1 through 5.

71.     During the period of January 10, 2015, and continuing through November 25, 2015, Defendants paid 1,734 claim lines submitted by Living Tree for medically necessary treatment provided to Recoupment Patients 1 through 5 in the amount of $328,750.18, reflecting the usual, customary, and reasonable rates for the particular medical services provided by Living Tree.

72.     Adopting the same deceptive practices applied to the Denied Claims Patient claim lines based on the alleged absence of required supporting documentation, Defendants then sent Living Tree letters demanding a 100% reimbursement for the 1,734 claim lines, seeking to offset against future Living Tree claims in the amount of $328,750.18.  Defendants' reason for each of the demanded repayments for these claims was:

   Not supported.  The submitted documentation does not include a valid physician order/requisition.  Missing information:  the name of the ordering physician, a legible provider signature, a patient/responsible date of signature and point of care testing details.  Of note, the illegible signature of the patient/responsible party

appears to [be] cut and pasted on the form.  Of further note, the illegible provider signature appears to be cut and pasted or stamped.

73.     On May 4, 2016, in response to the demand for repayment, Living Tree provided

Defendants with over 600 pages of detailed medical records for Living Tree's treatment of

Recoupment Patients 1 through 5.  These records clearly showed that the urinalysis drug testing

was ordered by a physician for each of the 1,734 claim lines as out-patient services provided by

Living Tree and were covered under the United Subscriber Plans.

74.     On October 4, 2016, Defendants rejected the supporting documentation provided

by Living Tree for the claims paid in 2015, and upheld their decision to demand repayment of all

1,734 claim lines based on the following:

The submitted documentation does not include a valid physician order/requisitions. Physician order/requisition does not include the name of the ordering provider, [or] a patient/responsible party date of signature.

75.     As more fully explained above, the urinalysis drug testing provided by Living

Tree is an integral part of the patient's substance abuse program.

76.     Defendants have provided no basis in the United Subscriber Plans that supports

their refusal to provide coverage for the medically necessary services provided by Living Tree

for United Subscribers.  Defendants also do not cite to any Plan language or statute requiring a

specific form of physician order/requisition to justify their 100% demanded repayment of the

amounts paid related to claims for Recoupment Patients 1 through 5.

77.     Instead, Defendants improperly and unfairly applied an undisclosed and

unsupported extrapolation method based on no scientific data to *every* claim line paid by

Defendants to Living Tree for the period of January 9, 2015 through February 1, 2016, (the "Paid

Claims Period") and demanded an additional $4,155.700.38 in alleged overpayments.

Defendants, therefore, without any reliable basis, having cited to no supporting Plan provision,

and having reviewed the claims for only 5 patients, have the audacity to demand 100% repayment through offsets against future claims submitted by Living Tree *for every single previously paid claim* during the Paid Claims Period for a total demanded repayment amount of $4,484,450.56.

      ii.    <u>Defendants' Improper Repayment Demand Related to Claims Submitted for Recoupment Patient 6.</u>

78.    During the period of June 8, 2015, and continuing through October 21, 2015, Defendants paid 948 claim lines submitted by Living Tree for medically necessary treatment provided to Recoupment Patient 6 (the "Recoupment Patient 6 Claims") in the amount of $188,305.71, reflecting the usual, customary, and reasonable rates for the particular medical services provided at Living Tree.

79.    Several months later, on February 24, 2016, Defendants sent Living Tree a repayment demand letter, claiming that Defendants were owed 100% of the previously paid claims based on the following:

> The definition of covered health services, under this member's plan is as follows: **Covered Health Services** – those health services, including services, supplies or Pharmaceutical Products, which Eddie Bauer LLC determines to be:
> - provided for the purpose of preventing, diagnosing or treating Sickness, Injury, Mental Illness, Substance Use Disorders, or their symptoms;
>
> All of the drug tests performed on this member are not covered services due to the fact that he was not in approved substance abuse treatment at the time of the tests being performed so the testing was not for the purpose of preventing, diagnosing or treating substance abuse disorders.

80.    Living Tree responded to Defendants on March 29, 2016, and explained that, at the time the claims for medically necessary treatment provided to Recoupment Patient 6 by Living Tree were submitted to Defendants, Patient 6 was an out-patient at "Counseling and Neurotherapy Associates" – a West Palm Beach, Florida counseling facility that is licensed by

24

the Florida Department of Children and Families, and which provides, among other things, substance abuse treatment.  Living Tree explained that, based on these facts, Defendants' decision to deny Recoupment Patient 6's claims was based on faulty evidence because Recoupment Patient 6 was enrolled in a facility that provided to him substance abuse treatment that met the requirement for coverage provided by the "Covered Health Services" language in Recoupment Patient 6's Plan.

81.     Defendants, however, failed to scrutinize, dispute or consider the facts provided by Living Tree in the March 29 letter, and, on May 4, 2016, upheld their overpayment decision based on the exact word for word "rationale" provided in Defendants' February 24 letter.

82.     Counseling and Neurotherapy Associates is, in fact, a licensed Florida substance abuse treatment facility.

83.     The United Subscriber Plan in which Recoupment Patient 6 is enrolled contains no language requiring Defendants to approve the out-patient substance abuse program in order to obtain coverage for treatment.   The *only* Plan language cited by Defendants in their correspondence with Living Tree requires that the health services be provided for the purpose of preventing, diagnosing or treating Substance Abuse Disorders.  Without a patient's receipt of drug testing as part of his/her substance abuse treatment program, the patient is not held accountable for their actions or deterred from engaging substance abuse, and, as such, there can be no effective treatment for Substance Abuse Disorders.  As such, Living Tree's services are "Covered Health Services" under Recoupment Patient 6's Plan.

25

I.     **Defendants' Deceptive Practice of Coercing Living Tree Into Accepting Deep Discounts by Threatening to Delay or Deny Newly Submitted Claim Lines.**

84.     The motivation behind Defendants' bad faith tactics is to force Living Tree into accepting deeply discounted payments for the medically necessary testing that Living Tree has provided to the United Subscribers.

85.     Defendants' improper motivation has become apparent from Defendants' recent practice of utilizing third-party negotiation companies, such as Medical Audit and Review Solutions, in an effort to coerce Living Tree into accept deep discounts to "expedite the payment process and avoid a full review of the available medical documentation." See Exhibit T attached hereto.

86.     For example, on February 14, 2017, Medical Audit and Review Solutions faxed Living Tree an offer to accept a "settlement" of $2,955.25 for a new set of claims, totaling $10,622.75, in rendered medically necessary services.  The one-page letter stated that entering into settlement:

- would "expedite payment"

- "avoid a full review of the available medical documentation,"

- would avoid the usual protocol that "calls for a complete medical records review and audit when these uncertainties arise,"

- "will help to speed up the payment, as well as avoid any additional physician intervention as part of our medical review."

See Id.  The letters also provided that Living Tree had only one day, until February 15, 2017, to agree to the proposed settlement.

87.     Defendants' new practice of utilizing third-party negotiation companies -- on the heels of Defendants' improper denial of over $7.6 million in claim lines, and improper repayment demands of more than an additional $4.6 million, described more fully above --

26

makes it clear that Defendants' true goal is not to comply with the terms of its Plans, but rather, to coerce Living Tree into accepting payments well below what it is entitled to under the terms of the Plans.

**J.      Defendants' Improper Claims Denials and Recoupment Demands Violate the Terms of the Applicable Plans.**

88.     Upon information and belief, each of the Plans at issue covers substance abuse and/or substance use disorder services provided for the purpose of preventing, diagnosing, or treating substance abuse and/or substance use disorders.  The Plans specify that services are covered where they are medically necessary and consistent with generally accepted standards of care, or a substantially equivalent standard.  As described more fully above, all of the testing provided by Living Tree, including the qualitative and quantitative testing described above, is medically necessary, consistent with generally accepted standards of care, and otherwise covered by the Plans.

89.     Moreover, upon information and belief, all of the Plans require reimbursement of medical expenses incurred by United Subscribers at usual, customary, and reasonable rates, or a substantially equivalent standard.  As reflected above, Living Tree's total billed charges reflect the usual, customary, and reasonable rates for the particular medical services provided by Living Tree, and are otherwise payable under the Plans.  Defendants do not deny that Living Tree's charges for the testing it provided to Defendants' Subscribers represent the usual, customary, and reasonable rates for those services.

90.      Defendants' improper denials of negative urinalysis drug test claim lines in the amount of $6,460,649.91 of Living Tree's billed charges are arbitrary, capricious and a clear violation of the Plans and applicable law.

27

91.    Defendants' demands for repayment of claim lines for covered services in the amount of $4,672,756.27 of Living Tree's billed charges are likewise arbitrary, capricious, and a clear violation of the Plans and applicable law.

92.    Significantly, United Subscribers who seek treatment at Living Tree pay higher premiums, at times substantially higher premiums, in order to have the right under the Plans to receive substance abuse treatment from the provider of their choice, including from out-of-network providers, such as Living Tree.  They bargain for and expect that payment be made at the providers' usual, customary, and reasonable rates.  Defendants' practices of: (1) paying claims in full and then demanding repayment based on purported physician order/approved treatment program technicalities that are not supported by the United Subscriber Plan language, and (2) denying claims for medically necessary substance abuse treatment based on an internal policy that is not part of the United Subscribers' Plans and/or demanding additional supporting documentation be submitted that is not required by the United Subscribers' Plans, entirely fail to meet reasonable expectations.

93.    Defendants acted as the plan administrators and as fiduciaries to the beneficiaries for each of the claims at issue in this case.  Defendants exercised discretion, authority, control and oversight in determining if plan benefits would be paid and the amounts of plan benefits that would be paid. Defendants' arbitrary and self-interested administration of these claims results in a payment of *none* of the claims and constitutes a clear violation of Plan benefit entitlements and applicable law for the medical services rendered.

**K.    Living Tree Has Exhausted Available Internal Appeals Remedies.**

94.    Moreover, although Defendants have never supplied to Living Tree the terms of the actual Plans covering the United Subscribers, upon information and belief, Living Tree has

exhausted or is in the process of exhausting all available appeals avenues under those Plans in an effort to convince Defendants to forego their repayment demands and to reimburse Living Tree properly for the denied and pending claims for the medically necessary treatment provided by Living Tree to the United Subscribers.

95.     Among other things, for the Denied Claims Patients, in response to Defendants' demands for additional documentation in order to process denied and pending claim lines, the documents were sent and were often treated as a first level appeal where the submission was beyond 60 days from Living Tree's initial submission.  In other instances, a formal first level appeal was filed by Living Tree upon receipt of an adverse determination letter.  Upon receipt of the first level appeal adverse determination letters, Living Tree filed a second level appeal.  In response to these appeals, Living Tree received another adverse benefit determination letter that stated "[t]his is the Final Adverse Determination of your internal appeal.  All internal appeals through UBH have been exhausted."  See Exhibits A, S and U through V (related to Patients 80, 16, and 39).  In addition, the "Important Information About Your Rights After A Final Administrative Non-Coverage Determination" page, attached thereto, stated "[i]s another appeal available?  No.  No additional reviews are available through us" without providing any additional avenues for appeal.  See Exhibits S and U through V.  Despite exhausting available appeal procedures, Defendants have failed to reverse their position regarding their denial of the claim lines related to the Denied Patient Claims.

96.     In addition, for certain claims, Living Tree follows the processes set forth in a document prepared by Defendants and entitled, "UnitedHealthcare:  Claim Reconsideration Request Reference Guide."  This document specifies that "[a] Claim Reconsideration Request is typically the quickest way to address any concern you have with how we processed your claim.

29

With a Claim Reconsideration Request, we review whether a claim was paid correctly, including if your provider information and/or contract are set up incorrectly in our system, which could result in the original claim being denied or reduced."

97.     In addition, where a "Claim Reconsideration Request" has either not been submitted or has been rejected, Living Tree follows the appeals processes set forth in a document prepared by Defendants and entitled, "UnitedHealthcare Community Plan:   Appeal Request Form."  This form states that it "is to be completed by Physicians, Hospitals, or other health care professionals who wish to request a clinical appeal of an adverse medical determination or administrative claim made by UnitedHealthCare Community Plan."

98.     Defendants have also refused to change their position regarding their repayment demands despite being provided with 600 pages of detailed medical records for Living Tree's treatment of Recoupment Patients 1 through 5, as evidence that the urinalysis drug testing was ordered by a physician for each of the 1,734 claim lines.   Moreover, no procedure exists, and Living Tree is therefore unable to appeal, the unsubstantiated and unsupported $4,155,700.38 extrapolation amount applied to Recoupment Patients 1 through 5.

99.     To date, approximately $12.3 million remains at issue.

100.     Moreover, despite exhausting the appeal procedures set forth in Defendants' own documents, Defendants have failed to adequately explain the basis for their repayment demands and denials to Living Tree.  In particular, Defendants have failed or refused to:  (a) provide the specific reason or reasons for the denial of claims; (b) provide the specific plan provisions relied upon to support the denials; (c) provide  the  specific  rule,  guideline  or  protocol  relied  upon in  making  the  decision  to  deny claims; (d) describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; and (e) for

Recoupment Patients 1 through 6, notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits.

101.   The instant action is timely commenced well within five years after Living Tree was notified by Defendants that they were demanding repayment or rejecting Living Tree's claims for reimbursement for the services that Living Tree provided to United Subscribers, and otherwise within five years after each of Living Tree's claims against Defendants accrued.

## V.   CAUSES OF ACTION

### COUNT ONE

**(Breach of Plan Provisions for Benefits in Violation of ERISA § 502(a)(1)(B) Related to the Denied Claims Patients and Recoupment Patients 1 through 5)**

102.   Living Tree incorporates by reference and reaffirms paragraphs 1 through 101 as if set forth at length herein.

103.   Living Tree has standing to pursue claims under ERISA as an assignee and authorized representative of the United Subscribers' claims under the Plans.

104.   As the assignee of the Plans, Living Tree is entitled to reimbursement under the ERISA Plans for the medical services provided to the United Subscribers by Living Tree.

105.   Upon information and belief, each of the Plans at issue covers substance abuse and/or substance use disorder services provided for the purpose of preventing, diagnosing, or treating substance abuse and/or substance use disorders.   Moreover, the Plans specify that services are covered where they are medically necessary and consistent with generally accepted standards of care, or a substantially equivalent standard.   In addition, the Plans require reimbursement of medical expenses incurred by United Subscribers at usual, customary, and reasonable rates, or a substantially equivalent standard.

300491631 v5

106.    The testing that Living Tree performed for United Subscribers is medically necessary and consistent with generally accepted standards of care.  Moreover, Living Tree's charges represent the usual, customary, and reasonable rates for the particular testing at issue.

107.    Defendants have breached the terms of the Plans by: failing to reimburse Living Tree for its full charges for the medically necessary substance abuse testing it has provided to United Subscribers; basing their reimbursement and coverage decisions, and their repayment demands, on the internal Optum Policy rather than on the terms of the Plans; and/or requiring additional supporting information not required by the Plans that Defendants then deem insufficient; and by demanding reimbursement and recoupments; and for refusing to make out-of-network reimbursements for charges covered by the Plans, in violation of ERISA 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).   These breaches include, among other things, demanding refunds and/or refusing to pay the usual, customary, and/or reasonable charges, or the prevailing fees or recognized charges, for medically necessary treatment and services performed by Living Tree.

108.    As a result of, among other acts, Defendants' numerous procedural and substantive violations of ERISA, any appeals are deemed exhausted or excused, and Living Tree is entitled to have this Court undertake a *de novo* review of the issues raised herein.

109.    Pursuant to    29 U.S.C. § 1132(a)(1)(B), Living Tree is entitled to recover recouped/unpaid/underpaid benefits from Defendants.   Living Tree is also entitled to declaratory and injunctive relief to enforce the terms of the Plans and to clarify its right to future benefits under such plans, as well as attorneys' fees.

## COUNT TWO

**(Violation of Fiduciary Duties of Loyalty and Due Care in Violation of ERISA related to the Denied Claims Patients and Recoupment Patients 1 through 5)**

110.    Living Tree incorporates by reference and reaffirms paragraphs 1 through 1011 as if set forth at length herein.

111.    29 U.S.C. § 1132(a)(3) states that a civil action may be brought by "a participant, beneficiary, or fiduciary to (A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

112.    Living Tree, as the assignee of ERISA members and beneficiaries under the insurance plans, is entitled to assert a claim for relief for Defendants' breach of fiduciary duties of loyalty and care and for failure to follow plan documents under 29 U.S.C. § 1104(a)(1)(B) and (D).

113.    Defendants exercised discretion, control, authority and oversight in determining whether plan benefits would be paid and the amounts of plan benefits that would be paid.

114.    As ERISA fiduciaries, Defendants owed Living Tree a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent fiduciary would use in the conduct of an enterprise of like character.  Further, as fiduciaries, Defendants were required to ensure that they were acting in accordance with the documents and instruments governing the Plans, and in accordance with ERISA § 404(a)(l)(B) and (D), 29 U.S.C. § 1104(a)(l)(B) and (D).   In failing to act prudently, and in failing to act in accordance with the documents governing the Plans, Defendants have violated their fiduciary duty of care.

300491631 v5

115.    As fiduciaries, Defendants also owed Living Tree a duty of loyalty, defined as an obligation to make decisions in the interest of its beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of members, in accordance with ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A) and ERISA § 406, 29 U.S.C. § 1106. Thus, Defendants could not make benefit determinations for the purpose of saving money at the expense of the United Subscribers.

116.    Defendants have violated their fiduciary duty of loyalty to Living Tree by, among other things, refusing to make or honor out-of-network reimbursements for services provided at Living Tree for their own benefit, at the expense of United Subscribers.  In addition, Defendants violated their fiduciary duty of loyalty by failing to inform Living Tree, as assignees of the United Subscribers, of material information.

117.    Living Tree has standing to pursue claims under ERISA as an assignee and authorized representative of the United Subscribers' claims.

118.    Living Tree is entitled to relief to remedy Defendants' violation of their fiduciary duties under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief.

## COUNT THREE

### (Denial of Full and Fair Review in Violation of ERISA § 503 related to the Denied Claims Patients and Recoupment Patients 1 through 6)

119.    Living Tree incorporates by reference and reaffirms paragraphs 1 through 101 as if set forth at length herein.

120.    As an assignee and authorized representative of the United Subscribers' claims, Living Tree is entitled to receive protection under ERISA, including (a) a "full and fair review"

of all claims denied by Defendants; and (b) compliance by Defendants with applicable claims procedure regulations.

121.    Defendants' improper repayment demands related to Recoupment Patients 1 through 6 are claim denials.

122.    Although Defendants are obligated to provide a "full and fair review" of denied claims pursuant to ERISA § 503, 29 U.S.C. § 1133 and applicable regulations, including 29 C.F.R. § 2560.503-1 and 29 C.F.R. § 2590.715-2719, Defendants have failed to do so by, among other actions:  refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support their denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; and refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.   B y  failing to comply with the ERISA claims procedures and regulations, Defendants failed to provide a reasonable claims procedure.

123.    Because Defendants have failed to comply with the substantive and procedural requirements of ERISA, any administrative remedies are deemed exhausted pursuant to 29 C.F.R. § 2560.503-1(l) and 29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(1).  Exhaustion is also excused because it would be futile to pursue administrative remedies, as Defendants do not acknowledge any basis for their denials and thus offer no meaningful administrative process for challenging their denials.

300491631 v5

124.    Living Tree has been harmed by Defendants' failure to provide a full and fair review of appeals submitted under ERISA § 503, 29 U.S.C. § 1133, and by Defendants' failures to disclose information relevant to appeals and to comply with applicable claims procedure regulations.

125.    Living Tree is entitled to relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief, to remedy Defendants' failures to provide a full and fair review, to disclose information relevant to appeals, and to comply with applicable claims procedure regulations.

## <u>COUNT FOUR</u>

### (Breach of Contract related to the Denied Claims Patients and Recoupment Patients 1 through 5 – as Assignees)

126.    Living Tree incorporates by reference and reaffirms paragraphs 1 through 101 as if set forth at length herein.

127.    Pursuant to Federal Rule of Civil Procedure 8(d), parties to a litigation may make pleadings in the alternative, regardless of consistency.

128.    To the extent that some of the Plans covering the United Subscribers are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts.

129.    As set forth more fully above, upon information and belief, all of the Plans require reimbursement of medically necessary treatment expenses incurred by United Subscribers at usual, customary, and reasonable rates.  Further, under the terms of the Plans, United Subscribers are entitled to coverage for the services that they received from Living Tree.

130.    By virtue of the "Assignment of Benefits" forms executed by the Denied Claims Patients and Recoupment Patients 1 through 5, Living Tree was assigned the right to receive

36

reimbursement under the Plans for the services that it rendered to the Denied Claims Patients and Recoupment Patients 1 through 5. Pursuant to said assignments of benefits, Defendants are contractually obligated to reimburse Living Tree for these services.

131. Defendants failed to make payment of benefits to Living Tree in the manner and amounts required under the terms of the Plans.

132. As set forth more fully above, upon information and belief, the Plans did not prohibit Recoupment Patients 1 through 6 from assigning their rights to benefits under the Plans to Living Tree, including the right of direct payment of benefits under the Plans to Living Tree.

133. Moreover, as set forth more fully above, to the extent that the Plans prohibited the assignment of benefits to Living Tree, Defendants have waived any purported anti-assignment provisions, have ratified the assignment of benefits to Living Tree, and/or are estopped from using any purported anti-assignment provisions against Living Tree due to their course of dealing with and statements to Living Tree as an out-of-network provider, discussed more fully above.

134. Moreover, as set forth more fully above, to the extent that Defendants claim that the Plans may have prohibited the assignment of benefits to Living Tree, any such purported anti-assignment prohibitions are unenforceable as, among other things, contrary to public policy, as adhesion contracts, and/or due to a lack of privity with Living Tree.

135. As the result of Defendants' failures to comply with the terms of the Plans and Fla. Stat. § 627.613, *et seq*., and/or any other applicable state common law, statutes, or regulations requiring timely payment of claims, Living Tree, as assignee, has suffered damages and lost benefits, for which it is entitled to damages from Defendants, including unpaid benefits, restitution, interest, and other contractual damages sustained by Living Tree.

300491631 v5

## COUNT FIVE

### (Breach of Contract– as Third-Party Beneficiary related to the Denied Claims Patients and Recoupment Patients 1 through 6)

136.    Living Tree incorporates by reference and reaffirms paragraphs 1 through 101 as if set forth at length herein.

137.    Pursuant to Federal Rule of Civil Procedure 8(d), parties to a litigation may make pleadings in the alternative, regardless of consistency.

138.    As noted above, to the extent that some of the Plans covering the United Subscribers are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts.

139.    Living Tree has provided laboratory tests to at least 200 United Subscribers since January 9, 2015.

140.    To the extent the United Plans are not issued pursuant to an employee benefit plan, United's failure to pay for the medically necessary services provided by Living Tree to United Subscribers described in this Complaint constitutes a breach of contract under Florida law.

141.    Living Tree is a third-party beneficiary under the Plans, as United intended to pay out-of-network providers under the Plans for services provided to United Subscribers.

142.    Living Tree is a third-party beneficiary of the United Plans and is entitled to recover benefits due to the United Subscribers and enforce their rights under the Plans and policies.

143.    As a result of Defendants' failure to comply with the terms of the Plans, and Fla. Stat. § 627.613, *et seq.*, and/or any other applicable state common law, statutes, or regulations requiring timely payment of claims, Living Tree, as third-party beneficiary, has suffered

damages and lost benefits, for which it is entitled to damages from Defendants, including unpaid benefits, restitution, interest, and other contractual damages sustained by Living Tree.

<u>**COUNT SIX**</u>

**(Breach of the Duty of Good Faith and Fair Dealing related to the Denied
Claims Patients and Recoupment Patients 1 through 6 – non-ERISA)**

144.     Living Tree incorporates by reference and reaffirms paragraphs 1 through 101 as if set forth at length herein.

145.     Pursuant to Federal Rule of Civil Procedure 8(d), parties to a litigation may make pleadings in the alternative, regardless of consistency.

146.     As set forth more fully above, if any of the Plans are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts.  As such, the Plans contain an implied duty of good faith and fair dealing.

147.     Defendants, as the obligor under the Plans, owed the Denied Claims Patients and Recoupment Patients 1 through 6 a duty of good faith and fair dealing with respect to said Plans.

148.     As set forth more fully above, the Denied Claims Patients and Recoupment Patients 1 through 6 received health care services at Living Tree and executed "Assignment of Benefit" forms, among other documents, in which they assigned to Living Tree their right to benefits under the Plans for the services that Living Tree provided to the United Subscribers.

149.     By virtue of these assignments, Defendants also owe this duty of good faith and fair dealing to Living Tree.

150.     As set forth more fully above, upon information and belief, the Plans did not prohibit the Denied Claims Patients and Patients 1 through 6 from assigning their rights to benefits under the Plans to Living Tree, including the right of direct payment of benefits under the Plans to Living Tree.

151.     Moreover, as set forth more fully above, to the extent that the Plans prohibited the assignment of benefits to Living Tree, Defendants have waived any purported anti-assignment provisions, have ratified the assignment of benefits to Living Tree, and/or are estopped from using any purported anti-assignment provisions against Living Tree due to their course of dealing with and statements to Living Tree as an out-of-network provider.

152.     Moreover, as set forth more fully above, to the extent that the Plans may have prohibited the assignment of benefits to Living Tree, any such purported anti-assignment prohibitions are unenforceable as, among other things, contrary to public policy, as adhesion contracts, and/or due to a lack of privity with Living Tree.

153.     Defendants breached their duty of good faith and fair dealing owed to Living Tree, as assignee of rights and benefits under the Plans, in a number of ways, described more fully above.

154.     Without limitation, Defendants' breaches include, but are not limited to, the following:

a.      Defendants' refusal to reimburse Living Tree relative to Living Tree's charges for the health care services Living Tree provided to the Denied Claims Patients and Recoupment Patients 1 through 6, when Defendants' liability for those amounts was reasonably clear;

b.      Defendants' improper repayment demands to Living Tree relative to Living Tree's charges for the health care services Living Tree provided to Recoupment Patients 1 through 6, when Defendants' liability for those amounts was reasonably clear;

c.      Defendants' failure to provide Living Tree with adequate written explanations for the refusal to reimburse all or a portion of Living Tree's claims for the services provided to the Denied Claims Patients and Recoupment Patients 1 through 6, as is required under Florida law;

40

d.      Defendants' failures to reimburse Living Tree's charges for the health care services provided to the Denied Claims Patients and Recoupment Patients 1 through 6, and their refusal to provide adequate written explanations for the failure to pay all or a portion of such claims, within the statutorily proscribed time frames under Florida law;

e.      Defendants' employment of arbitrary methodology for determining whether to reimburse Living Tree for the tests, treatment, and supplies Living Tree provided to the Denied Claims Patients and Recoupment Patients 1 through 6;

f.      Defendants' patently inadequate explanations for their repayment demands of Living Tree;

g.      Defendants' misrepresentation of requirements for reimbursement under the Plans;

h.      Defendants' practice of authorizing their Subscribers to obtain treatment at Living Tree, only to deny coverage after the treatment has been provided;

i.      Defendants' imposition of unduly burdensome preconditions to payment not contained in the Plans; and

j.      Defendants' failure to comply with Fla. Stat. § 627.613, *et seq.*, and/or any other applicable state common law, statutes, or regulations requiring timely payment of claims.

155.    Defendants' conduct in derogation of their duty of good faith and fair dealing under the Plans has deprived Living Tree of its reasonable expectations and benefits as assignee of benefits under the Plans.

## COUNT SEVEN

**(Promissory Estoppel related to the Denied Claims Patients and Recoupment Patients 1 through 6)**

156.     Living Tree incorporates by reference and reaffirms paragraphs 1 through 101 as if set forth at length herein.

157.     Pursuant to Federal Rule of Civil Procedure 8(d), parties to a litigation may make pleadings in the alternative, regardless of consistency.

158.     As noted above, to the extent that some of the Plans covering the United Subscribers are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts.

159.     Living Tree has provided urinalysis testing as part of substance abuse programs to at least 200 United Subscribers since January 9, 2015.

160.     Defendants represented to Living Tree through continued reimbursement without issue for necessary medical services provided to the Denied Claims Patients and Recoupment Patients 1 through 6, for claims submitted by Living Tree prior to 2016, as discussed more fully above, that the medical treatment sought by the Patients at Living Tree was a covered procedure under the Plans, and that the fees associated with that treatment were Covered Charges under the Plans.   Based on Defendants' historical payment practices for the exact same medical services, Living Tree reasonably understood that the patients seeking medical care and treatment had active coverage and benefits and  that some payment would be forthcoming for the medical services provided at Living Tree based on those procedures.

161.     Living Tree provided medical services to United Subscribers in reliance on Defendants' historical payment practices regarding coverage and benefits.   In the absence of Defendants' continued reimbursement without issue for necessary medical services provided to

42

the Denied Claims Patients and Recoupment Patients 1 through 6, for claims submitted by Living Tree prior to 2016, Living Tree would not have provided the medical services. This reliance was reasonably foreseeable, as Defendants reimbursed claims submitted for the United Subscribers, including the Denied Claims Patients and Recoupment Patients 1 through 6, without issue until 2016, when Defendants abruptly began to deny all claims newly submitted claims and demanded reimbursement for claims submitted for Recoupment Patients 1 through 6 for services rendered in 2015, and an additional unjustifiable extrapolated amount of $4,155,700.38.

162.    As a result of Living Tree's detrimental reliance on Defendants' statements, Living Tree has suffered and continues to suffer injury, including money damages, and injustice can only be avoided by Defendants honoring their previous promises.

## COUNT EIGHT

### (Temporary and Permanent Injunctive Relief related to the Denied Claims Patients and Recoupment Patients 1 through 6)

163.    Living Tree incorporates by reference and reaffirms paragraphs 1 through 101 as if set forth at length herein.

164.    Currently, Defendants are wrongfully demanding repayment for, or denying payment completely, for virtually all claims for benefits submitted for medical services provided at Living Tree. In so doing, Defendants have failed and are failing to comply with the terms of the Plans and their other obligations, including their obligations under ERISA.

165.    Defendants, while wrongfully demanding payment for, or denying payment completely, for virtually all claims for benefits submitted for medical services provided at Living Tree, continue to wrongfully demand additional supporting documentation for every claim line submitted by Living Tree for reimbursement, draining Living Tree's administrative resources

and forcing them to incur the cost of hiring additional full-time staff to comply with Defendants' unreasonable and unnecessary demands.

166.    Unless enjoined from doing so, Defendants will continue not to comply with the terms of the Plans and their other obligations, including under ERISA, to Living Tree's severe detriment.  A monetary judgment in this case will only compensate Living Tree for past losses, and will not stop Defendants from continuing to confiscate the money earned by Living Tree and necessary to maintain its medical facility, in addition to draining Living Tree's financial resources by forcing it to comply with demands for additional supporting documentation not required by the Plans.  Living Tree has no practical or adequate remedy, either administratively or at law, to avoid these future losses.

167.    Living Tree is entitled to a preliminary and permanent injunction requiring Defendants to process claims for medical services performed at Living Tree in accordance with the terms of the Plans, and requiring Defendants to stop summarily denying claims for medically-necessary services provided by Living Tree and encumbering Living Tree with unnecessary demands for additional supporting documentation.

## **COUNT NINE**

### **(Declaratory Judgment - 28 U.S.C. § 2201 related to the Denied Claims Patients and Recoupment Patients 1 through 6)**

168.    Living Tree incorporates by reference and reaffirms paragraphs 1 through 101 as if set forth at length herein.

169.    This is a count for declaratory relief pursuant to 28 U.S.C. § 2201.

170.    Upon information and belief, each of the Plans at issue covers substance abuse and/or substance abuse disorder services provided for the purpose of preventing, diagnosing, or treating substance abuse and/or substance abuse disorders.  Moreover, the Plans specify that

services are covered where they are medically necessary and consistent with generally accepted standards of care, or a substantially equivalent standard.  In addition the Plans require the reimbursement of medical expense incurred by United Subscribers at the usual, customary, and reasonable rates, or a substantially equivalent standard.

171.    Defendants failed to make payment of benefits to Living Tree in the manner and amounts required under the terms of the Plans.

172.    Defendants demand refunds and/or refuse to pay the usual, customary, and/or reasonable charges, or the prevailing fees or recognized charges, for medically necessary treatment and services performed by Living Tree.

173.    Defendants, while wrongfully demanding payment for, or denying payment completely, for virtually all claims for benefits submitted for medical services provided at Living Tree, continue to wrongfully demand additional supporting documentation for every claim line submitted by Living Tree for reimbursement, draining Living Tree's administrative resources and forcing them to incur the cost of hiring additional full-time staff to comply with Defendants' unreasonable and unnecessary demands.

174.    As a direct and proximate result of Defendants' acts and omissions, including but not limited to Defendants' failures to comply with the terms of the Plans and Fla. Stat. § 627.613, *et seq.*, Living Tree has sustained and will continue to sustain in the future damages and has been deprived and will continue to be deprived in the future of the compensation to which it is entitled to receive for providing covered treatment discussed in this Amended Complaint.

175.    The existence of another potentially adequate remedy does not preclude a judgment for declaratory relief.  *See* Federal Rules of Civil Procedure Rule 57.

300491631 v5

176.    Living Tree is entitled to supplemental relief pursuant to 28 U.S.C. § 2201, including the payment of all money that was not paid to Living Tree by Defendants for providing medically-necessary services discussed in this Amended Complaint, and a declaratory judgment requiring Defendants to process claims for medical expenses performed by Living Tree in accordance with the terms of the Plans, for Defendants to stop summarily denying claims for medically-necessary services provided by Living Tree and encumbering Living Tree with unnecessary demands for additional supporting documentation.

177.    Pursuant to Florida Statutes § 86.081, Plaintiff is entitled to costs as are equitable.

## COUNT TEN

### (Declaratory Judgment - Florida Statutes § 86.081)

178.    Living Tree incorporates by reference and reaffirms paragraphs 1 through 101 as if set forth at length herein.

179.    This is a count for declaratory relief pursuant to Florida Statutes § 86.081.

180.    Upon information and belief, each of the Plans at issue covers substance abuse and/or substance abuse disorder services provided for the purpose of preventing, diagnosing, or treating substance abuse and/or substance abuse disorders.  Moreover, the Plans specify that services are covered where they are medically necessary and consistent with generally accepted standards of care, or a substantially equivalent standard.  In addition the Plans require the reimbursement of medical expense incurred by United Subscribers at the usual, customary, and reasonable rates, or a substantially equivalent standard.

181.    Defendants failed to make payment of benefits to Living Tree in the manner and amounts required under the terms of the Plans.

182.     Defendants demand refunds and/or refuse to pay the usual, customary, and/or reasonable charges, or the prevailing fees or recognized charges, for medically necessary treatment and services performed by Living Tree.

183.     Defendants, while wrongfully demanding payment for, or denying payment completely, for virtually all claims for benefits submitted for medical services provided at Living Tree, continue to wrongfully demand additional supporting documentation for every claim line submitted by Living Tree for reimbursement, draining Living Tree's administrative resources and forcing them to incur the cost of hiring additional full-time staff to comply with Defendants' unreasonable and unnecessary demands.

184.     As a direct and proximate result of Defendants' acts and omissions, including but not limited to Defendants' failures to comply with the terms of the Plans and Fla. Stat. § 627.613, *et seq.*, Living Tree has sustained and will continue to sustain in the future damages and has been deprived and will continue to be deprived in the future of the compensation to which it is entitled to receive for providing covered treatment discussed in this Amended Complaint.

185.     The existence of another potentially adequate remedy does not preclude a judgment for declaratory relief.

186.     Living Tree is entitled to supplemental relief pursuant to § 86.081, including the payment of all money that was not paid to Living Tree by Defendants for providing medically-necessary services discussed in this Amended Complaint, and a declaratory judgment requiring Defendants to process claims for medical expenses performed by Living Tree in accordance with the terms of the Plans, for Defendants to stop summarily denying claims for medically-necessary services provided by Living Tree and encumbering Living Tree with unnecessary demands for additional supporting documentation.

300491631 v5

187.    Pursuant to Florida Statutes § 86.081, Plaintiff is entitled to costs as are equitable.

## COUNT ELEVEN

**(Violations of the Minnesota Consumer Fraud Act – Related to the Denied Claims Patients)**

188.    Living Tree incorporates by reference and reaffirms paragraphs 1 through 101 as if set forth at length herein.

189.    One or more of the individual Defendants are headquartered or incorporated in Minnesota.

190.    Living Tree and Defendants are "persons" as defined by Minn. Stat. §§ 8.31, subd. 3a and 325F.68.

191.    The medical services at issue in this case and health insurance plans sold by Defendants are all "merchandise" as defined by Minn. Stat. § 325F.68.

192.    The sales of said merchandise to consumers are "sales" as defined by Minn. Stat. § 325F.68.

193.    With the intent to sell enrollment in Defendants' health insurance plans to consumers in all 50 states, including Minnesota consumers, Defendants have represented to consumers that such plans provide coverage for in-patient and out-patient substance abuse treatment.  Such representations are false.

194.    Defendants have marketed their substance abuse treatment coverage to consumers as an additional benefit included in their health insurance plans.  Members of the public, including Minnesota consumers, who enroll in such plans reasonably rely on the fact that medically necessary substance abuse treatment expenses will be covered by their health insurance plan issued by Defendants.  Living Tree, as third-party beneficiaries of the health insurance plans issued by Defendants, expend its resources and provide services in reliance of

payment under such plans.  Defendants' effective nullification of this coverage through denial of urinalysis drug testing costs, which are an integral part of the patient's substance abuse treatment, based on the Optum Policy, shifts the burden of payment for covered necessary medical services upon the consumer, and, if Living Tree is unable to continue its operations due to Defendants' nullification of coverage, leaves consumers without access to necessary medical treatment.  Accordingly, Defendants have caused, and will continue to cause hundreds of patients, and Living Tree, as a third-party beneficiary, an ascertainable loss.

195.    On information and belief, Defendants knowingly and willfully induced consumers, including Minnesota consumers, into enrolling in their health insurance plans by representing that the plans provided coverage for substance abuse treatment, and, at the time of patient enrollment, effectively concealed the existence of the Optum Policy from the patients.

196.    Said representations and concealments are material to consumer decisions regarding which insurance plans to enroll in, and they constitute unlawful practices pursuant to Minn. Stat. §§  325F.69.

197.    As a result of Defendants' misrepresentations and concealments, consumers have suffered and will continue to suffer due to the effective prohibition by Defendants' Optum Policy to receive coverage under Defendants' health insurance plans for urinalysis drug testing. Because the urinalysis drug testing is an inseparable component of an effective substance abuse treatment, consumers are left without the ability to participate in an effective covered substance abuse program.  In addition, Living Tree, as the third-party beneficiary under several hundred of these patients' health insurance plans, has and will continue to suffer ascertainable losses of revenue.

198.    In light of the foregoing, Defendants violated Minn. Stat. §§  325F.68.

199.    Living Tree brings this action pursuant to Minn. Stat. §§ 8.31, subd. 3a, 325F.68 and 325F.69, as a person that has suffered and will continue to suffer an ascertainable loss of money as a result of Defendants' effective prohibition against a United Subscriber's ability to participate in an effective covered substance abuse program.   These acts constitute unlawful practices, and in accordance therewith, Living Tree seeks injunctive relief, in order to benefit the public through allowing the United Subscribers to participate in an effective covered substance abuse program to effectively make substance abuse treatment available to United Subscribers, that prohibits Defendants from denying coverage for United Subscribers for medically necessary drug tests that yield a negative result based on the Optum Policy or similar policies, as well as damages, equitable relief, attorneys' fees, and court costs.

## VI.    CONDITIONS PRECEDENT

200.    All conditions precedent have been performed or have occurred.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Living Tree demands judgment in its favor against Defendants as follows:

A.    For a declaratory judgment by this Court finding that Defendants have breached the terms of the Plans with regard to out-of-network benefits and awarding damages for the claims offset against future Living Tree claims, as well as an award of injunctive and declaratory relief to prevent Defendants' continuing actions detailed herein;

B.    For a declaratory judgment by this Court finding that Defendants failed to provide a "full and fair review" under § 503 of ERISA, 29 U.S.C. § 1133, and applicable claims procedure regulations, and that "deemed exhaustion" under such regulations is in effect as a result of Defendants' actions, as well as awarding injunctive, declaratory and other equitable

relief to ensure compliance with ERISA and its claims procedure regulations;

C.      For a declaratory judgment by this Court finding that Defendants violated their fiduciary duties under § 404 of ERISA, 29 U.S.C. § 1104, and awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA;

D.      For a declaratory judgment by this Court finding that Defendants failed to comply with the terms of the Plans and Fla. Stat. § 627.613, *et seq*., and declare that Defendants process claims for medical services performed by Living Tree in accordance with the terms of the Plans, for Defendants to stop summarily denying claims for medically-necessary services provided by Living Tree and encumbering Living Tree with unnecessary demands for additional supporting documentation and for costs as are equitable.

E.      For a declaratory judgment by this Court pursuant to Florida Statutes § 86.081, including the payment of all money that was not paid to Living Tree by Defendants for providing covered treatment discussed in this Amended Complaint, for Defendants to stop summarily denying claims for medically-necessary services provided by Living Tree and encumbering Living Tree with unnecessary demands for additional supporting documentation and for costs as are equitable.

F.      For an award of damages based on Defendants' misrepresentations and nondisclosures regarding the existence of benefits for these substance abuse treatment services based on promissory estoppel, including any exemplary damages permitted by law;

G.      For an injunction that temporarily and permanently enjoins Defendants from continuing to pursue their actions detailed herein, and ordering Defendants to pay benefits in accordance with the terms of the Plans and applicable law;

H.      For an award of lost profits, contractual damages, and compensatory damages in

51

such amounts as the proofs at trial shall show;

      I.      For an award of exemplary damages for Defendants' intentional and tortious conduct in such amounts as the proofs at trial will show;

      J.      For an award of restitution for reimbursements improperly withheld by Defendants;

      K.      For a declaratory judgment by this Court finding that Defendants have violated the terms of the relevant plans and/or policies of insurance covering the United Subscribers;

      L.      For a judgment that requires Defendants to abandon their wrongful repayment demands and to reimburse Living Tree for any amounts improperly offset against future Living Tree claims related to the United Subscribers;

      M.      For a judgment that requires Defendants to make full payment on all previously denied charges relating to the United Subscribers;

      N.      For a judgment that requires Defendants to pay Living Tree the benefit amounts as required under the Plans;

      O.      For an award of reasonable attorneys' fees, as provided by common law, federal or state statute, or equity, including Section 502(g) of ERISA, 29 U.S.C. § 1132(g), as well as Florida Statutes § 627.428;

      P.      For an award of the costs of suit;

      Q.      For an award of pre-judgment and post-judgment interest as provided by common law, federal or state statute or rule, or equity; and

      R.      For an award of all other relief to which Plaintiff is entitled.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated:  February 27, 2017

Respectfully submitted,

By:  _/s/ Steven R. Weinstein_
Steven R. Weinstein, Esq.
Florida Bar No. 985848
steven.weinstein@klgates.com
Charles F. Wolf, Esq.
Florida Bar No. 99227
charles.wolf@klgates.com
**K&L Gates LLP**
Southeast Financial Center
200 S. Biscayne Boulevard, Suite 3900
Miami, FL 33131-2399
Telephone:     305-539-3300
Facsimile:     305-358-7095

        and

Anthony P. La Rocco (pro hac vice)
anthony.larocco@klgates.com
George P. Barbatsuly (pro hac vice)
george.barbatsuly@klgates.com
One Newark Center, 10th Floor
Newark, New Jersey 07102
Telephone:     973-848-4000
Facsimile:     973- 848-4001
*Attorneys for Plaintiff*
*Living Tree Laboratories, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel or parties on the below service list on this 27th day of February, 2017.

<i>/s/ Steven R. Weinstein</i>

**Case No. 1:16-cv-24680-DPG/WCT**

David I. Spector, Esq.
david.spector@akerman.com
Sandra Heller, Esq.
sandra.heller@akerman.com
Irene Bassel Frick, Esq.
irene.basselfrick@akerman.com
**Akerman LLP**
777 S. Flagler Drive, Suite 1100 – West Tower
West Palm Beach, FL 33401
Telephone:     561-653-5000
Facsimile:      561-659-6313
*Counsel for Defendants*

300491631 v5